IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MUNEVERA TMUSIC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-CV-00743-MDH |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff Munevera Tmusic's appeal of Defendant Social Security Administration Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act. Plaintiff exhausted her administrative remedies, and the matter is now ripe for judicial review. After carefully reviewing the record, the Court finds that the Administrative Law Judge's decision is supported by substantial evidence in the record as a whole and the decision is **AFFIRMED**.

## BACKGROUND

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401 *et seq*. (Tr. 144-45). Her application was denied initially, and she appealed to an administrative law judge, ALJ, (Tr. 75-81). After careful consideration of the entire record, and an administrative hearing at which Plaintiff testified and was represented by counsel, the ALJ found that Plaintiff had severe impairments, but remained able to perform jobs available in the national economy (Tr. 10-19, 30-57). Accordingly, on October 8, 2019, the ALJ found that Plaintiff was not disabled (Tr. 19).

The ALJ concluded that Plaintiff could perform a range of light work, with additional non-exertional limitations (Tr. 16). *See* 20 C.F.R. § 404.1567(b) (defining "light work"). Specifically, the ALJ found that Plaintiff:

- could not use her right lower extremity for foot controls or pushing and pulling;
- could not climb ladders, ropes, or scaffolds, work at unprotected heights, or work around hazardous moving machinery;
- could occasionally stoop, and climb ramps and stairs;
- could not kneel, crouch or crawl;
- could frequently balance;
- had to avoid more than occasional exposure to vibration;
- required the option to elevate her right leg from the floor on a footstool, but no higher than 18 inches

(Tr. 13).

The ALJ determined that Plaintiff could not perform her past relevant work, but she could do other work existing in significant numbers in the national economy (Tr. 17-18). The ALJ reached this decision by questioning a vocational expert regarding a hypothetical person with Plaintiff's RFC (Tr. 17-18, 51-57).

## STANDARD

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552

2

Case 4:20-cv-00743-MDH   Document 18   Filed 03/02/22   Page 2 of 11

F.3d 728, 730 (8th Cir. 2009). Rather, "[i]f, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

Courts "defer heavily to the findings and conclusions of the Social Security Administration" and will disturb the Commissioner's decision only if it falls outside the "zone of choice." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). Incorrect application of a legal standard is grounds reversal, *Ford v. Heckler*, 754 F.2d 792 (8th Cir. 1985), but the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart,* 433 F.3d 575, 578 (8th Cir. 2006). Finally, while a deficiency in opinion writing is not enough to merit reversal where it has no practical effect on the outcome, incomplete analyses, inaccuracies, and unresolved conflicts of evidence may be a basis for remand. *Reeder v. Apfel*, 213 F.3d 984, 988 (8th Cir. 2000).

## DISCUSSION

The central question in this case is whether or not the Plaintiff would need to elevate her leg to hip level during the workday. Vocational expert testimony at her hearing established that Plaintiff would not be competitively employable if she was required to elevate her foot up to hip level at a workstation. (Tr. 56-58). Plaintiff argues that the ALJ's determination that Plaintiff retained the RFC to perform work with the option to elevate her right leg no higher than 18 inches is not supported by the substantial evidence of record. Plaintiff further argues that the ALJ's credibility finding is also not supported by the evidence of record.

I. **The RFC is supported by substantial evidence in the record**

In her consideration of the entire record, the ALJ -assessed medical opinions as to the extent of Plaintiff's impairment (Tr. 16-17). As an initial matter, it is important to note that the treating physician rule, along with the entirety of the old regulations on medical opinions, 20 C.F.R. § 404.1527, does not apply for claims filed on or after March 27, 2017. In its place, the agency adopted a new regulation. *See* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). Among the many changes, the agency explained that it will "*not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources.*" *Id.* (emphasis added). These new regulations eliminated the term "treating source," as well as what was customarily known as the treating physician rule. *See id.* In short, there is no treating physician rule, and the body of case law devoted to that issue is inapplicable to decisions on claims filed on or after March 27, 2017. For such claims, a "medical opinion" has been redefined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ." 20 C.F.R. § 404.1513(a)(2).

In this case, Plaintiff protectively filed her application on August 29, 2018 (Tr. 10). Accordingly, the ALJ followed the new set of regulations when assessing medical-opinion evidence (Tr. 21-22). Under the new regulations, an ALJ must explain how he or she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding. At the ALJ's discretion, other factors may also be considered in assessing the persuasiveness of medical-opinion evidence in a given case. *See* 20 C.F.R. §§ 404.1520c(a)-(c).

Here, the ALJ properly discussed each opinion, and reached a finding that was supported by substantial evidence.

The ALJ's evaluation of medical-opinion evidence began with her discussion of a prior administrative findings made by State agency consultant who reviewed Plaintiff's file (Tr. 16, 65-68). As the ALJ explained, on December 18, 2018, State agency medical consultant Garland Tschudin, M.D., after a thorough review of Plaintiff's file, found that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently (Tr. 16, 65). She could stand or walk up to four hours, and she could sit for six hours in an eight-hour workday (Tr. 16, 65). She was limited to occasional pushing and pulling with the right, lower extremity (Tr. 16, 66). She could occasionally climb ladders, ropes, or scaffolds and frequently balance (Tr. 16, 66). She could occasionally stoop, kneel, crouch, and crawl but had to avoid concentrated exposure to vibration and hazards (Tr. 16, 66-67). Finding this opinion persuasive, the ALJ noted that it was generally consistent with the evidence as thoroughly discussed in the decision (Tr. 16). The ALJ explained that Plaintiff's treatment notes also supported her function increased when her wound healed, and she ambulated without an assistive device (Tr. 16, 592, 594). The ALJ also explained that she found it significant that Plaintiff could stay at home independently while her husband worked, drove, and performed self-care (Tr. 16). The ALJ properly found this opinion persuasive (Tr. 16).

The ALJ also appropriately found the various opinions of Dr. Jurgensmeier were not persuasive (Tr. 16-17). First, the ALJ noted that during an appointment on November 22, 2017, Dr. Jurgensmeier opined that Plaintiff was significantly restricted (Tr. 636-67). Finding this opinion not persuasive, the ALJ noted that it was not consistent with the evidence and was rendered during the healing process of Plaintiff's wound (Tr. 16). Similarly, the ALJ found Dr. Jurgensmeier's August 22, 2018 and August 5, 2019 opinions not persuasive (Tr. 16-17, 622-25,

5

846-89). The ALJ explained that, while the restrictions for standing, walking, lifting and carrying were consistent with Plaintiff's testimony regarding her activities of daily living, the evidence did not support the opinion regarding time off task, absences from work, and significantly reduced standing (Tr. 17). However, the ALJ found it significant that more recent evidence supported a finding that Plaintiff's gait had improved (Tr. 841), she did not require an assistive device to ambulate (Tr. 623), and her lower extremity strength was intact (Tr. 593, 676, 821). For that reason and all of the other reasons previously detailed, the ALJ properly found that Dr. Jurgensmeier's opinion was non-persuasive. *See Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019); *Allen v. Berryhill,* No. 3:18-05084-CV-RK, 2019 WL 5423024, at *2 (W.D. Mo. Oct. 23, 2019) (ALJ properly found opinion less persuasive under the new regulations where it was inconsistent with treatment notes and the overall record).

Thus, after thorough review, the ALJ reached a comprehensive RFC determination that did not precisely mirror any of the medical opinions in the record (Tr. 13-17). Reaching such a decision was within her discretion, because "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)). Moreover, it bears repeating that an ALJ is never compelled to adopt an unsupported medical opinion, even if it comes from a treating source. *See* 20 C.F.R. §§ 404.1513(a)(2); 404.1520c; *Gross v. Saul*, No. 4:19-CV-00504-DGK, 2020 WL 3287945, at *2 (W.D. Mo. June 18, 2020) (applying these standards under the new regulations). Ultimately, interpreting a physician's findings remains a factual matter left to the ALJ's authority. *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016).

In sum, the ALJ properly considered the severity of Plaintiff's alleged impairments, supported her finding that Plaintiff's subjective reports were less than fully consistent and further described the bases by which she assessed opinion evidence (Tr. 13-17).

## II. The ALJ properly evaluated Plaintiff's subjective complaints

The Commissioner's regulations direct an ALJ to give reasons if, as in this case, she does not fully credit the claimant's testimony. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529 (discussing the process for evaluating symptoms); Social Security Ruling (SSR) 16-3p. Here, although the ALJ found that Plaintiff's allegations were partially consistent with the evidence, she also determined that objective medical evidence failed to support Plaintiff's allegations; the record showed noncompliance with treatment recommendations; her daily activities were more extensive than one would expect, given her allegations; and other inconsistencies undermined the consistency of Plaintiff's self-reports. Because substantial evidence supported the ALJ's decision to discount Plaintiff's subjective claims, and because the ALJ gave good reasons for doing so, we ask the Court to affirm his finding. *See Turpin v. Colvin*, 750 F.3d 989, 993-94 (8th Cir. 2014); *McDade v. Colvin*, 720 F.3d 994, 998 (8th Cir. 2013).

Plaintiff's claims of disabling physical limitations were not supported by objective evidence (Tr. 14, 16-22). Although an ALJ may not reject a claimant's subjective complaints solely for lack of objective medical evidence, the ALJ may consider the absence of objective medical evidence supporting the degree of severity alleged. *See* 20 C.F.R. § 404.1529(c)(2), (the agency will consider "objective medical evidence" when evaluating symptoms); *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (an ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary" (citation omitted)). Here, the ALJ observed that, after treatment for varicose veins, Plaintiff developed a very large wound on the

lower right extremity, which was slow to heal (Tr. 297). She had tenderness of the wound area on examination (Tr. 257, 648). Plaintiff complained of fatigue and aching in the legs while the wound was healing in February 2017 (Tr. 258). The ALJ acknowledged that, during the healing process, Plaintiff demonstrated difficulty walking, carrying weight, and performing activities of daily living; needed grooming supplies set out for her; and was not always able to cook for herself (Tr. 501, 503, 629-30, 671).

Even after the wound healed, the ALJ observed that Plaintiff continued to report ongoing pain symptoms (Tr. 240, 242, 629, 707, 747, 824, 865), as well as swelling following ambulation (Tr. 824, 860-62, 865). She continued to demonstrate mild gait disturbance and had some sensory disturbance of the right foot on examination (Tr. 593, 751, 783, 824, 873). As her wound was healing, in 2018, Plaintiff demonstrated increased exercise tolerance and improved function (Tr. 592, 594). Her gait improved, with ongoing physical therapy, and she was able to demonstrate normal gait in 2018 (Tr. 593, 676, 697, 823-31). She exhibited full strength in her lower extremities (Tr. 593, 676, 821).

This objective medical evidence undermined the consistency of Plaintiff's subjective reports. An ALJ may properly consider such inconsistencies between a claimant's allegations and the record. *Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017); 20 C.F.R. § 404.1529(c)(2). Even when a claimant's testimony is fully accepted, her subjective claims alone are insufficient to prove disability:

> Statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. § 404.1529(a). Given the lack of other compelling evidence, the absence of "medical signs and laboratory findings" in support of Plaintiff's allegations is fatal to her case.

In addition to the objective medical evidence, the ALJ further observed that Plaintiff failed to follow her providers' treatment recommendations (Tr. 14-15). "[A]n ALJ may properly consider the claimant's noncompliance with a treating physician's directions, . . . including failing to take prescription medications, . . . seek treatment, . . . and quit smoking." *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006). For example, the ALJ noted that Plaintiff's wound was slow to heal due to her ongoing smoking habit (Tr. 15, 295, 297, 327). Further, although Plaintiff reported ongoing pain symptoms, she declined spinal nerve block treatment and did not wear compression stockings prescribed to her (Tr. 15).

In considering the consistency of Plaintiff's allegations, the ALJ did credit Plaintiff with a steady work history prior to her alleged onset date, which demonstrated Plaintiff was motivated to work (Tr. 15). However, the ALJ appropriately concluded that other factors outweighed the work history (Tr. 15). For example, the ALJ explained that, even though Plaintiff experienced improvement of her symptoms, she had not attempted to return to work at a lighter level of exertion (Tr. 15). And, the ALJ noted that the evidence supported that Plaintiff retained a greater ability to function than alleged because, despite lower extremity complaints and difficulty with brain fog, Plaintiff retained the ability to drive twice a week (Tr. 15). The ALJ also found it inconsistent that Plaintiff testified that she did not provide care for her youngest child, but she brought her daughter with her to appointments (Tr. 15, 593). Further, Plaintiff could stay at home independently, while her husband worked, and could perform her own self-care routine (Tr. 15).

While this does not by itself prove that Plaintiff was able to perform work-related tasks, it provides substantial evidence that her condition during the relevant period was not disabling. *See,*

*e.g.*, *Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (Plaintiff's ability to prepare two-course meals, read, play internet games, leave her apartment several times a week, visit family and friends a few times each year, and have dinner at a friend's house once or twice a month showed Plaintiff was capable of completing simple tasks, leaving her home, and interacting with others on at least a superficial level); *Ponder v. Colvin*, 770 F.3d 1190, 1195-96 (8th Cir. 2014) (claimant's admission that she could perform light housework, prepare meals, do laundry, and shop "undermine[d] her assertion of total disability").

An ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin*, 826 F.3d at 1086 (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). Here, the ALJ supported her finding that Plaintiff's subjective reports were less than fully consistent, and Plaintiff makes no compelling argument to the contrary. Accordingly, the ALJ's determination should be affirmed. See *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.").

This Court's role is to determine whether substantial evidence supports *the ALJ's* decision. The mere fact that Plaintiff pointed to some evidence supporting her position does not justify remand. *See Biestek*, 139 S. Ct. at 1154 ("[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support *the agency's* factual determinations" (citations omitted, emphasis added)). The ALJ acted within her discretion, cited extensive evidence to support her conclusions, and provided good reasons to explain her decision that Plaintiff was not disabled.

## CONCLUSION

For the reasons set forth herein, the Court finds there is substantial evidence in the record as a whole to support the ALJ's determination. Accordingly, the Commissioner's decision denying benefits to Plaintiff is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: March 2, 2022

　　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Douglas Harpool*
　　　　　　　　　　　　　　　　　　　　　　　　　　　**DOUGLAS HARPOOL**
　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**